MARTIN ARENSON, PLAINTIFF-APPELLANT, v. SKOURAS
THEATRES CORPORATION, DEFENDANT-RESPOND-
ENT.

Submitted October 29, 1943—Decided March 23, 1944.

For the plaintiff-appellant, *Hammill, Schnitzer & Reilly.*

For the defendant-respondent, *Carey & Lane* and *David A. Pindar.*

The opinion of the court was delivered by

DONGES, J. Plaintiff-appellant sued to recover damages for injuries sustained in defendant-respondent's motion picture theatre by allegedly sitting on a seat that was wet with a liquid containing a chemical that burned his body and thereby inflicted injury. Plaintiff-appellant had a verdict in the Hudson County Court of Common Pleas, which, upon appeal, was reversed by the Supreme Court on the ground

that there was no proof that defendant-respondent was responsible for the presence of the fluid on the seat, except by evidence which the Supreme Court held was incompetent and was illegally admitted as part of the *res gestæ.*

The instant case is not controlled by the rule laid down in *Zappala* v. *Stanley Company of America,* 124 *N. J. L.* 569. In that case it was held that a defect in a seat that caused its collapse was sufficient to put defendant to its proofs to show that it had exercised reasonable care to discover such defect. Here, the defect was not inherent but was caused by the application of a harmful substance, the presence of which may or may not have been due to a lack of reasonable care on the part of defendant.

We are then met with the question whether there was competent and admissible proof of failure of defendant to exercise reasonable care in discharging its duty to plaintiff, admittedly a patron. The testimony relied upon by plaintiff is set out in the opinion of the Supreme Court, and relates a conversation between the manager of the theatre and the usherette who showed plaintiff to the seat in question, or, perhaps more accurately stated, was a report of the usherette to the manager, in the presence and hearing of plaintiff, as to the cause of the presence of the "wetness" of the seat. The testimony is that plaintiff's pants became wet, whereupon he sought the manager and told him it was caused by the wetness of the seat. The manager, thereupon, according to plaintiff's testimony, interrogated the usherette as to how the seat became wet, and was informed, "that they had been using this fluid to get some gum off the seat." The manager later testified that a fluid was used to remove gum from seats, which fluid was supplied by the "home office." He denied that he was told that the fluid had been used on that occasion. We do not pass upon the credibility of the proffered testimony. That is for the jury, if a case for jury determination is made out. We are passing only upon the admissibility of the testimony.

The Supreme Court held that this testimony was inadmissible as part of the *res gestæ,* because merely narrative of a past occurrence. With this we agree. There are two grounds

for the admission of such testimony, namely that the declaration was concomitant with and illustrative of the character of the event. *Cf. Blackman* v. *West Jersey and Seashore Railroad Co.,* 68 *N. J. L.* 1. The other ground is that statements made by a general agent in the course of the business entrusted to him are admissible as evidence against his principal. In the instant case, admittedly, the manager was in the course of his duty in inquiring as to the cause of the wetness of plaintiff's clothes, which the manager in his testimony described as "about three inches, so wide, about three inches." He thereupon, plaintiff testified, asked the usherette several questions calling for an explanation of the presence of wetness on the seat and received the answers in question. Such questions and answers were in the course of official duty of the manager and called for response from the employee. The case of *Raffetto* v. *Warner Bros. Theatre Co.,* 121 *Id.* 333, relied on by respondent, does not decide to the contrary but sets out that testimony of acts and statements in the performance of a manager's duty are admissible. So too does *Marmorstein* v. *State Theatres Corp.,* 6 *N. J. Mis. R.* 66; *affirmed,* 106 *N. J. L.* 574.

In *Ashmore* v. *Pennsylvania Steam Towing and Trans. Co.,* 38 *N. J. L.* 13, Chief Justice Beasley said:

"With regard to the law of evidence, I think there should be no difference whatever between the binding effect of the admissions of a general and a special agent. In both cases alike, the rule should be that the admission, to be evidence, was made in pursuance of the power conferred. In this particular there is no difference between the acts and the words of the agent: with respect to the first, he must be authorized to do them; with respect to the latter, he must be authorized to speak them. In each set of instances it is a question of authority. Upon the basis of this rule, then, the authority of the general agent to bind his principal by his statements, would be broader than that of the special agent, in the ratio of the transcendence of the power of the former over that of the latter, but the right of each to speak for his principal would rest on the same ground, that is, his authority to conduct the business confided to him. All statements made in the

conduct of such business are evidence against the principal; all others are inadmissible, because they are unauthorized. By considering the words of the agent in the light of acts—verbal acts—the subject will be cleared of all obscurity, and there will be no more difficulty in deciding when such words are admissible, than there is in concluding what acts of the agent can be proved. When the word or the act is done in pursuance of the agent's duty, it can be proved against the principal, otherwise, not.  *  *  *

"Manifestly, then, the rule thus defined does not embrace statements, declarations or admissions of the agent, which are not made in the execution of the agency. That they relate to the business of the agency, is not sufficient; but they must be in the performance of it."

In *Huebner* v. *Erie Railroad Co.*, 69 *N. J. L.* 327, it was said, quoting from *Runk* v. *Ten Eyck*, 24 *Id.* 756:

"Declarations and doings of a third person, acting in the capacity of an agent, are exempt from the general rule respecting hearsay testimony. They are admitted in evidence against the principal as the representations or acts of the principal himself whom the agent represents, while engaged in the particular transaction to which the declarations or acts refer. They must constitute a part of the *res gestæ* in the course of his employment about the matter in question; they must accompany the doing of the business or making of the contract, and must be within the scope of the delegated authority."

This rule has been uniformly followed in this state. The question arises: Were the statements in question made by the agents of the defendant in the execution of their agency? There seems no room for doubt that they were so made. The manager was clearly charged with the duty of operation and to see that acts of employees were not negligent. It is clear that the manager was conducting a transaction for the principal, an inquiry into an immediate occurrence that was in the execution of his duty, and that the answers of the girl to such queries of the manager form part of the act—the inquiry—which was being conducted for the benefit of the principal by its agent. The answers of the girl were as much

part of the act as if the principal had propounded the same inquiry to the manager. Here each was an agent of the principal for certain duties and each was acting within the scope of the agency in asking and answering questions. The testimony was not incompetent and there was no error in admitting it.

It is also argued that hypothetical questions propounded to medical witnesses called by plaintiff were incompetent. A reading of the record establishes that the questions were so framed as to have adequate support in the testimony. We conclude that there was no error in this regard.

Defendant also argues that it was error to deny motions for nonsuit and for direction of a verdict in favor of defendant. As the testimony disclosed, at the close of plaintiff's case, it could be found that defendant had used a substance to clean the seat to which plaintiff was directed; that plaintiff sat upon such wet substance and thereafter developed the injuries for which he sought recovery; that medical witnesses testified it was their opinion such substance produced the injury complained of; that the testimony failed to disclose the content of such substance, the plaintiff testifying it smelled like benzine and the theatre manager testifying it smelled like alcohol. Upon the entire record, we conclude that the testimony raised a question of fact for the determination of the jury and that it was not error to deny defendant's motions for nonsuit and directed verdict.

In the interest of proper procedure, we deem it important to call attention to the fact that the direction of the Supreme Court in ordering the entry of judgment for defendant, upon its conclusion that error was committed in the admission of testimony, is contrary to the established practice.

Chief Justice Depue in *Lehigh Valley Railroad Co.* v. *McFarland*, 44 *N. J. L.* 674, speaking for this court said:

"The court is not restricted to a general affirmance or reversal, and may, on a reversal of the judgment below, give a new judgment in favor of the plaintiff in error, or award a *venire de novo,* as the justice of the case may require. If the whole merits of the case are fully and finally determined by the decision of the court above, the court will finally decide

the controversy by giving such a judgment in favor of the plaintiff in error, as should have been given in the court below. On the other hand, if the judgment is not reversed upon the whole merits of the case, but upon some collateral or incidental question not involving the substantial grounds of the litigation or covering the whole case, the court, in reversing the judgment below, will simply direct a *venire de novo,* in order that the case may be put on a retrial upon the merits." Citing *Garr* v. *Stokes,* 16 *N. J. L.* 403, and other cases.

The case of *Lehigh Valley Railroad Co.* v. *McFarland, supra,* is typical of cases where trial error results in reversal, but where all of the facts are not so settled that judgment should be entered in the upper court.

Typical of cases where there is no factual question, either because of stipulation or otherwise, determined as matter of law, are *Smith* v. *Ocean Castle,* 59 *N. J. L.* 198; *Vorrath* v. *Burke,* 63 *Id.* 190; *Taylor* v. *Reed,* 68 *Id.* 178; *Sullivan* v. *Visconti,* 68 *Id.* 543 (at *p.* 551) ; *National Bank* v. *Berrall,* 70 *Id.* 757; *Ellwood* v. *Smith,* 104 *Id.* 248 (at *p.* 250) ; *State Board* v. *Kresge,* 115 *Id.* 495; *Flanagan* v. *Green,* 121 *Id.* 327 (at *p.* 332).

It is clear 'that where the alleged error does not determine the merits, there should be a *venire de novo* and not entry of judgment for the appellant.

The judgment of the Supreme Court is accordingly reversed, and the judgment of the Hudson County Court of Common Pleas is affirmed.

*For affirmance*—DILL, J.   1.

*For reversal*—THE CHANCELLOR, PARKER, CASE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ.   12.